## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DENISE  WELLS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:14-CV-1239** |
| | § | |
| **TANARRA  JAMES,** | § | |
| **DIRECTOR OF INDUSTRY** | § | |
| **OPERATIONS HOUSTON DIVISION** | § | |
| **BUREAU OF ALCOHOL, TOBACCO,** | § | |
| **FIREARMS AND EXPLOSIVES** | § | |
| | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM AND ORDER</u>

Respondent has filed before this Court a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c), contending that, as a matter of law, this Court must affirm Respondent's revocation of Petitioner's federal firearms license.  After considering the submissions of the parties and the applicable law, the Court **DENIES** Respondent's Motion for Summary Judgment (Doc. No. 20).

## I.     BACKGROUND

Petitioner Denise Wells first applied for a federal firearms license (FFL), on behalf of the business Armaments International (Texas), in April of 2005.  Gov't Ex. 13.  Wells is an attorney and had never before been involved in a firearms business.  Gov't Ex. 15.  She planned to acquire a weapons inventory from Alfred Johnson, a client of hers, whose own license had been revoked after he became ineligible to hold an FFL.  Pet'r's Resp. 7 (Doc. No. 34).  Wells and Johnson are also partners in a business called Quantum International.  *Id.* at 5.

After ATF Officer Don Hollingsworth interviewed Wells on October 19, 2005, her application was approved, and the ATF issued an FFL to Wells on January 11, 2006.  Resp't Mot. Summary J. 8-9 (Doc. No. 20).  That FFL expired in 2009, and in 2010, Wells reapplied for and was issued a new license.  Pet'r's Resp. 8.  On June 10, 2013, the ATF issued a Notice of Revocation of License to Wells, claiming that Wells had "falsified her application"—presumably the 2010 application, although that is not specified—and that Armaments International was in fact a hidden partnership with Mr. Johnson.  Resp't Mot. Summary J. 6.  Following a hearing in November of 2013, the ATF revoked Wells's FFL for willfully violating the Gun Control Act, 18 U.S.C. § 924(a)(1)(A), and 27 C.F.R. § 47.128(a).  *Id.* at 6.  In support of its decision, Respondent, ATF's Director of Industry Operations for the Houston Division, pointed to changes Wells made to her first FFL application, including changing the description of Armaments International from a "joint venture" to a "sole proprietorship."  *Id.* at 8.  Based largely on information available on the two companies' websites, Respondent also found that Quantum International—the business Wells owned in partnership with Johnson—was "not distinguishable in any practical sense" from Armaments International and concluded that Johnson had "the power to direct, or at least influence," the operation of Armaments International.  Resp't Mot. Summary J. 12.

Wells filed a Petition for De Novo Review of the revocation of her FFL in this Court. Doc. No. 1.  She claims that, in her 2005 interview with Officer Hollingsworth, she informed Hollingsworth of her connection to Johnson, namely, that she intended to use Johnson as a consultant for her firearms business.  Pet'r's Resp. 5.  According to Wells, the changes to her FFL application were made at Officer Hollingsworth's suggestion.  *Id.*  Wells denies Respondent's contention that Wells willfully attempted to conceal material information in her

FFL application, and she denies that Johnson had any control over Armaments International.  *Id.*
at 11-12.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if no genuine
issue of material fact exists and the moving party is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  Importantly, "the
mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56
requires that the fact dispute be genuine and material."  *Willis v. Roche Biomed. Lab.,* 61 F.3d
313, 315 (5th Cir.1995).  Material facts are those whose resolution "might affect the outcome of
the suit under the governing law."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248
(1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  *Id.* (citing *Anderson,* 477 U.S. at 248).  A court may consider
any evidence in the record, "including depositions, documents, electronically stored information,
affidavits or declarations, stipulations (including those made for purposes of the motion only),
admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A).  However,
hearsay, unsubstantiated assertions, and unsupported speculation will not suffice to create or
negate a genuine issue of fact.  *McIntosh v. Partridge,* 540 F.3d 315, 322 (5th Cir.2008); *Eason
v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996); *Reese v. Anderson,* 926 F.2d 494, 498 (5th
Cir.1991); *Shafer v. Williams,* 794 F.2d 1030, 1033 (5th Cir.1986); *see* Fed.R.Civ.P. 56(c)(4).

### B.    Standard of Review

An administrative revocation or denial of a federal firearms license by the ATF is subject
to *de novo* judicial review in federal district court pursuant to 18 U.S.C. § 923(f)(3).  The ATF's

determination is not entitled to any presumption of correctness.  *Weaver v. Harris*, 856 F. Supp. 2d 854, 857 (S.D. Miss. 2012), *aff'd*, 486 F. App'x 503 (5th Cir. 2012).

### C.        Revocation of a Federal Firearms License

The Gun Control Act allows for the revocation of any FFL "if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . . ." 18 U.S.C. § 923(e).  The criteria for revoking a license under § 923(e) is equivalent to the relevant criteria for denying a license under § 923(d)(1)(C): the applicant must have willfully violated a provision of the chapter or a regulation prescribed under the chapter.  That is significant because almost all of the case law on this point involves denials of licenses, rather than revocations.

Although there is no Fifth Circuit precedent to direct this Court, other courts have held, and this Court agrees, that willfully failing to disclose material information in an application for an FFL—including the fact that an individually legally ineligible to hold a license would serve as a responsible person in the firearms business—is sufficient grounds for the denial of a license under 18 U.S.C. § 923(d)(1)(C).  *See, e.g.*, *XVP Sports, LLC v. Bangs*, 2012 WL 4329263, at *1, *10 (E.D. Va. Mar. 21, 2012) *report and recommendation adopted*, 2012 WL 4329258 (E.D. Va. Sept. 17, 2012) (holding that plaintiff's failure to list someone as a responsible person on the application for an FFL, with the intention of preventing the ATF from examining that person's history of GCA violations, was itself a willful violation of the GCA).   It therefore follows that willfully failing to disclose a responsible person on an application for an FFL is sufficient grounds for the revocation of that license.  It is uncontested that the term "responsible person" was defined on Wells' application for a federal firearms license as "[a]ny person possessing directly or indirectly the power to direct or cause the direction of the management, policies, and

4

buying and selling practices of the business insofar as such management, policies, and buying and selling practices pertain to firearms." Resp't Mot. Summary J.

In order for the ATF to revoke a license under § 923(e), the license holder's alleged violation of the Gun Control Act must be willful. "A license holder commits a willful violation . . . when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e., recklessly violates them). A dealer's repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference. There is no requirement that the violations occurred with any bad purpose." *Weaver*, 856 F. Supp. 2d at 857 (internal quotations and citations omitted).

## III.   ANALYSIS

The record before this Court does not show, as a matter of law, that Alfred Johnson was a responsible person in Armaments International. Although the ATF produced circumstantial evidence linking Johnson and Armaments International, which led Respondent reasonably to conclude that Johnson was a responsible person, such evidence does not entitle Respondent to a judgment when the Court is tasked with *de novo* review.

The undisputed evidence showed that the website for Armaments International was designed by "Al Johnson © 2008 at Homestead [TM]," and that "the website stated that the company had acquired the business of 'Al Johnson International' and its 'key personnel' in 1993." Resp't Mot. Summary J. 10. Additionally, on Quantum International's website, Quantum International was described as "a holding company for various business entities, including Armaments International," and Quantum International's website provided a link to the website of Armaments International. *Id.* It is undisputed that the two websites listed the same

physical address and telephone numbers; however, neither the address nor the telephone number belonged to Johnson. *Id.* Moreover, there is no direct evidence indicating that Johnson made any decisions for, or directed in any way, the firearms business of Armaments International. Respondent does not claim that Johnson physically handled any of the firearms, and Respondent does not point to a single decision that Johnson made regarding the business.

In the cases relied on by Respondent, where courts concluded that challenged conduct was sufficient to rise to that of "responsible persons," much more involvement with the business was shown. That is, a showing was made that a person had the power to direct the management, policies, and buying and selling practices of firearms businesses. Unlike in *National Lending Group, LLC v. Holder*, Respondent has not presented evidence establishing that Johnson "participated in the daily activities of the business, . . . handl[ed] firearms, . . . [or] had a direct ownership interest" in Armaments International. 365 F. App'x 747, 749 (9th Cir. 2010). Unlike in *XVP Sports, LLC v. Bangs*, Johnson is not the sole owner of Armaments International, with the uncontested ability to fire Wells or to exert control over her decisions by threatening to fire her. 2012 WL 4329258, at *1 (E.D. Va. Sept. 17, 2012). *See also Mew Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 680 (N.D.W. Va. 2014) *aff'd*, 594 F. App'x 143 (4th Cir. 2015) (holding that applicant's wife was a responsible person because, among other things, she "placed the orders for inventory with wholesalers, helped tag and log the firearms, showed guns to customers, called in sales to the FBI, filled out the firearm transaction forms, completed the acquisition and disposition recordbook, had authority to draw on the business's checking account, including drafting payroll checks, and acted as the human resources department"). In fact, courts have held that individuals with significantly *more* direct control over firearms, compared to Johnson, were nevertheless not responsible persons in the firearms business. *See,*

6

*e.g.*, *United States v. 1,922 Assorted Firearms & 229,553 Rounds of Assorted Ammunition*, 330 F. Supp. 635, 638 (E.D. Mo. 1971) (finding that a store clerk who had a key to the store premises, was in charge of the store in the owner's absence, and was authorized to sell firearms was not a responsible person as defined in the license application).

Even if this Court were to assume that Johnson were a responsible person, moreover, there would still be a material dispute regarding Wells's willfulness in violating the GCA. The record simply does not establish that Wells had knowledge of what the law required and that she acted intentionally or recklessly in violating those requirements when she filled out her FFL application. Both must be established for the violation to be willful. It is undisputed that Officer Hollingsworth interviewed Wells on October 19, 2005, and that they discussed Alfred Johnson's role in Armaments International at that interview. But, while Respondent cites the changes made to Wells's original application as proof of willfulness, Wells claims that Hollingsworth told her to make those changes, and indeed, the Firearms Qualification Report signed by Officer Hollingsworth noted that the changes "were made to the original application in order to accurately reflect the new business structure." Gov't Ex. 15 at 4. Again, Respondent may have acted reasonably in determining that Wells willfully violated the GCA—but this Court cannot hold so as a matter of law.

IV.   **CONCLUSION**

For the foregoing reasons, Respondent's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** on this the 2nd day of September, 2015.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

7